UNITED STATES *ex rel.* GERALDINE
PETROWSKI,

      Plaintiff,

v.                                CASE NO: 8:15-CV-1408-T-30JSS

EPIC SYSTEMS CORPORATION,

      Defendant.

_____/

# ORDER

THIS CAUSE comes before the Court upon Defendant's Motion to Dismiss (Dkt. 46) and Relator's Memorandum of Law in Opposition (Dkt. 52). The Court, upon review of the motion, response, and being otherwise advised in the premises, concludes that the motion should be granted. As discussed more thoroughly below, the Court concludes that Relator Geraldine Petrowski has failed to meet the heightened pleading requirement for claims alleging fraud and that this conclusion alone warrants dismissal of her claims alleging False Claim Act violations. Accordingly, the second amended complaint will be dismissed with prejudice.

## FACTUAL BACKGROUND

The following facts are taken from the second amended complaint (Dkt. 23). Relator Geraldine Petrowski was employed by WakeMed Health, a healthcare provider, from September 2008, to June 2014. Defendant Epic Systems Corporation offers health care

software that supports healthcare providers in their provision of patient care. Epic also offers billing systems that allow health care providers to generate bills that can be sent to private insurers and/or government health care program payors, including Medicare and Medicaid.

During the relevant time, Petrowski worked for WakeMed Health as the Supervisor of Physician's Coding. WakeMed Health utilized Epic's billing software. Petrowski served as the hospital liaison regarding Epic's implementation of its software at WakeMed Health. Petrowski alleges that Epic's software incorrectly bills anesthesia charges. Petrowski does not allege specific dates as to when Epic's software was implemented at WakeMed Health. She alleges that she trained at Epic's Wisconsin location for a week. She was trained on Epic's "Resolute Billing Charge Capture system." (Dkt. 23 at ¶11). After the training, she became certified as a "Charge Capture Analyst for Epic's 2012 and 2014 systems in order to more readily assist Epic's implementation of its software with . . . WakeMed Health." *Id.* As part of this effort, Petrowski was involved in deciding which CPT codes to load, "ensuring that pricing was correct, and verifying that documentation was completed and it triggered the correct code which mapped to the same code on the claim form." *Id.*[1]

Petrowski alleges that she "worked vigorously to ensure that Epic's software code regarding anesthesia billing and coding complied with Medicare and Medicaid guidelines." During "this process" she developed concerns regarding incorrect billing practices that were caused by Epic's billing software. *Id.* at ¶12. She avers that, effective January 1, 2012,

---

[1] These allegations do not contain any specific dates as to when these events occurred.

Medicare changed its billing and reimbursement practices regarding anesthesia services. The "units to be billed" required actual minutes, instead of the prior practice of 1 unit equaling 15 minutes. The new regulations provided that only the physician's actual time on the procedure should be submitted/billed on the claim form. Petrowski alleges that Epic's software, however, allowed hospitals to set up their anesthesia billing modules to include the sum of the actual time, plus the base unit time. This resulted in the provider being reimbursed twice for the base unit component. *Id.* at ¶13.

According to the second amended complaint, "[Petrowski] went so far as providing examples to [Epic] representatives illustrating this unlawful practice." Epic told her that "all other hospitals are billing base units." Petrowski "finally succeeded in forcing [Epic] to take out the base units submission from the hospital's anesthesia billing module, but once again was told that they have 'built all other systems with this feature included.'" *Id.* at ¶15. Petrowski "believes" that Epic's software continues to double bill for anesthesia services. She alleges that it is "probable" that most of Epic's software customers are using Epic's billing software "as written to double bill anesthesia." *Id.* at ¶¶16-17. Petrowski does not allege when any of these events took place. She also does not identify the Epic "representatives" she spoke to about the alleged unlawful billing practice.

The second amended complaint states that "The Epic Handbook on Billing Anesthesia indicates that Epic continues to improperly include base units in its billing protocol thereby resulting in overbilling of payors including Medicare and Medicaid." *Id.* at ¶20. And that this "unlawful billing protocol has resulted in the presentation of hundreds of millions of

dollars in fraudulent bills for anesthesia services being submitted to Medicare and Medicaid as false claims." *Id.* at ¶21.

The second amended complaint alleges three claims under the False Claims Act ("FCA"). Each claim incorporates the prior claim's allegations. Also, though pled as distinct claims under the FCA, each claim alleges the same six paragraphs of legal conclusions. For example, each claim, after incorporating by reference the allegations in each of the preceding paragraphs, states: "As set forth above, Defendant knowingly, or acting with deliberate ignorance and/or reckless disregard of the truth, made false representations about the software it provided which led to fraudulent double billing of anesthesia." *Id.* at ¶¶ 2, 8, 14.

Epic moves to dismiss the second amended complaint in its entirety.[2] Epic argues, in relevant part, that the claims fail to plead fraud with particularity under Federal Rule of Civil Procedure 9(b), as required for FCA claims. The Court agrees.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). On the

---

[2] The United States declined to intervene in this action.

contrary, legal conclusions "must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

### I.     The FCA

The FCA permits private individuals to file a civil action on behalf of the United States—it is referred to as a *qui tam* action—against anyone (1) who knowingly presents, or causes to be presented, a false or fraudulent claim for payment to the United States government; (2) who knowingly makes, uses, or causes to be made or used, a false record or statement material to a false claim; or (3) who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government.  31 U.S.C. § 3729(a)(1)(A)-(B), (G).

The FCA was first enacted in 1863, and its purpose, "then and now, is to encourage private individuals who are aware of fraud being perpetrated against the government to bring such information forward." *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1307 (11th Cir. 2002) (citing *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1237 n.1 (11th Cir. 1999)).  To this end, the FCA provides that the government may elect to take over the lawsuit and that the private plaintiffs who initially filed it, known as relators, will share in the government's recovery should there be any.  31 U.S.C. § 3730(d)(1).  If the government elects not to intervene, as has happened here, a relator may

continue to pursue the claim individually and recover a percentage of the proceeds from any judgment or settlement.  31 U.S.C. § 3731(d)(2).

Notably, "[l]iability under the False Claims Act arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) (per curiam).  In the healthcare context, a False Claims Act violation typically involves billing for services not provided or not medically necessary.  *U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302 (11th Cir. 2010) (per curiam).

## II.     Rule 8(a)(2) and Rule 9(b)

At the pleading stage, a complaint alleging violations of the FCA must satisfy two requirements.  First, the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Second, the complaint must satisfy Rule 9(b)'s heightened pleading requirement for claims alleging fraud.  That is, it must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

In the Eleventh Circuit, the complaint must particularize the fraud in several important respects:

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral presentations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

With respect to FCA claims, the Eleventh Circuit has stated the Rule 9 pleading requirement more succinctly: to state a claim under the FCA, "a plaintiff must plead 'facts as to time, place, and substance of the defendant's alleged fraud,' specifically 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" *Clausen*, 290 F.3d at 1310 (quoting *United States ex rel. Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 567-68 (11th Cir. 1994)). Moreover, because liability under the FCA attaches not to underlying fraudulent activity, but to the submission to the government of a *claim for payment*, the claims submitted to the government or the statements supporting those claims must be pled with particularity. *Id.* at 1312 (citing concurring sister circuits) (emphasis in original); *see also United States ex rel. Matheny v. Medco Health Solutions Inc.*, 671 F.3d 1217, 1225 (11th Cir. 2012). The submission of a false claim is "the *sine qua non* of a False Claims Act violation." *Clausen*, 290 F.3d at 1312; *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

The key inquiry is whether the complaint includes "some indicia of reliability" to support the allegation that an actual false claim was submitted. *Clausen*, 290 F.3d at 1311. One way to satisfy this requirement is by alleging the details of false claims by providing specific billing information—such as dates, times, and amounts of actual false claims or copies of bills. *See Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1326 (11th Cir. 2009).

Alternatively, the Eleventh Circuit has deemed indicia of reliability sufficient where the relator alleged direct knowledge of the defendant's submission of false claims based on her own experiences and on information she learned in the course of her employment. *See U.S. ex rel. Walker v. R&F Props. Of Lake Cty., Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005). However, the basis of this direct knowledge must be pled with particularity. *See Sanchez*, 596 F.3d at 1302-03, n.4.

## III.    Analysis

The second amended complaint lacks the "indica of reliability" required to state a claim under the FCA.  As Epic points out in its motion, despite labeling each Count under a different section of the FCA, Petrowski parrots the language of 31 U.S.C. § 3729(a)(1)(A) for each Count, asserting that Epic purportedly "made false representations about [its] software" and "presented or caused to be presented, a false or fraudulent claim for payment . . ." "[a]s set forth above."  Yet, there are no allegations "set forth above" of representations by Epic about its software, let alone misrepresentations to anesthesia providers or the government.  Nor are there any credible allegations that any false or fraudulent claim was submitted to Medicare.  Indeed, it is entirely unclear how Epic presented or caused to be presented a false claim to Medicare because there are no supporting details.  Petrowski does not allege any facts about the alleged misrepresentation, like whether it was oral or written, what it consisted of, who made it and to whom, when it was made, where it was made, what claim was actually submitted to Medicare, by whom it was submitted, or when it was submitted.

In other words, the second amended complaint fails the most basic test for Rule 9(b) particularity. *See Clausen*, 290 F.3d at 1310 ("a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." (internal quotation omitted). Petrowski alleges only that Epic's software *could* be used in such a way that would allow its hospital customers to generate bills that cause the Medicare program to double pay for certain aspects of professional anesthesia services. This is woefully deficient because it is based on pure speculation. And the exhibits attached to the second amended complaint do not fill these gaps because they do not support the allegations of purported double-billing.[3]

It is important to underscore that, not only does Petrowski fail to identify specific facts in support of Count I, she omits any allegations in support of the statutory requirements for violations of §§ 3729(a)(1)(B) (Count II) and (G) (Count III). Thus, the allegations in support of Counts II and III are insufficient even under the more lenient Rule 8(a)(2) pleading requirements.

Petrowski's training on the Epic billing software is also insufficient to state a claim under the FCA because there are no facts as to how she knew how other healthcare providers used the Epic billing software. Petrowski also does not allege any facts that her former

---

[3] For example, Exhibit B appears to be a document that itemizes the receipt of payments from Blue Cross for surgical and pathology services without any apparent reference to anesthesia. Exhibit B does not support a plausible claim under the FCA.

employer, WakeMed Health, actually submitted any false claims using Epic's billing software. Broken down, her allegations amount to no more than an assertion that the Epic software theoretically could have been used to lead to incorrect billing.

In sum, the second amended complaint falls woefully short of stating a claim under the FCA and will be dismissed with prejudice. Notably, Petrowski did not seek leave to further amend her complaint. And her response in opposition to Epic's motion to dismiss does not request dismissal without prejudice to amend her complaint. Nor does her response identify any further allegations in support of her claims that would make amendment worthwhile. *See Long v. Satz*, 181 F.3d 1275, 1279-80 (11th Cir. 1999) (per curiam) (noting that to properly request leave to amend, a plaintiff must (1) file a motion for leave to amend, and (2) "either set forth the substance of the proposed amendment or attach a copy of the proposed amendment."); *see also Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (holding that a "district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.").

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant's Motion to Dismiss (Dkt. 46) is granted.

2. This action is dismissed with prejudice as to Relator Geraldine Petrowski. The dismissal is without prejudice as to any FCA claims the United States may assert against Defendant Epic Systems Corporation.

3.     The Clerk of Court is directed to close this case and terminate any pending

motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on February 6, 2018.


JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE


Copies furnished to:
Counsel/Parties of Record